with 22-2092 United States v. Warner. May it please the court, counsel, Chief Judge Holmes. My name is Joel Myers. I have the privilege of representing Charles Warner before this court this morning. I'll try to reserve approximately two minutes for rebuttal. On October 28, 2019, Charles Warner was not in the business of selling firearms. And under the very unique circumstances of this case, he believed that he was permitted to possess the firearms he did have. And finally, based upon the then operative definition of frame and receiver, the property that he did possess was not properly classified as a frame or receiver and therefore not a firearm. Well, the 25. Above 25. Yeah, you can see there were 14. I certainly can see that, Judge Bacharach. I'm sorry. Yes. That's all right. The 66, well, 67, I think that Ms. Eisenbaiz had evaluated. 66 of those she claimed were frames and receivers. It's my position and Mr. Warner's position that they were not frames and receivers because they did not meet the operative definition at the time of frame and receiver. Certainly, this morning, I concede again, as I must, that the court's recent decision, Vincent v. Garland, does undermine a significant portion of the argument that I presented in my brief. While I'm not abandoning the argument, I'm not going to spend time arguing that today. But contrary to the United States claim, however. I won't press the abandonment, but what do you think is left of that claim after Vincent v. Garland? I mean, what is there remaining on that claim? As far as before the 10th Circuit, I don't believe anything, Judge. Okay. What I meant to say is I don't abandon the strength of the argument. However, I certainly recognize this court has ruled against it. I'm hopeful and anticipate the Supreme Court will take that up later, given the circuit's stated issue. But I don't want to waste the court's time arguing. I think the people in that probably did a much better job than I would do anyway. But contrary to the United States claim, I don't believe, and even though this court, 10th Circuit, disfavors as-applied challenges, I don't believe Vincent v. Garland eliminates the whole notion of an as-applied challenge to Mr. Warner. I think it was a much broader decision as applied to all nonviolent felons. I'm here today arguing that, as for Mr. Warner is concerned, the unique circumstances of his case distinguish him from that. And I think as applied to him, the 922G prohibition is unconstitutional. So in that regard, allow me to discuss the unique features of Mr. Warner's case. Starting with every interaction that he had with the court prior to, before, trial before Judge Johnson, a judge in that case, a state judge, South Carolina as well as New Mexico, allowed Mr. Warner to continue to possess firearms, despite, in the first instance, being convicted of a felony in South Carolina. He was actually allowed to keep the firearm, provided he made restitution to the victim in that case. Fast forward a number of years to New Mexico, where Mr. Warner, I certainly concede, pleaded guilty to felony possession of firearms before a state judge in New Mexico. And perversely, as it may seem, and shocking as it may seem, the judge in that case actually allowed Mr. Warner to continue to possess firearms. Albeit with certain restrictions in the course of his business. Just on those base facts alone, I think, you know, would certainly lead someone to conclude that going forward, they might not be prohibited by possessing firearms. So your position is that he knew that the South Carolina conviction was punishable by a year or more in prison, but he was led to believe that the existence of a potential punishment in excess of a year would not have precluded him from possessing a firearm? I'll answer it this way, Judge. He certainly knew that he had been convicted of a felony. So in that case, a crime potentially punishable in excess of a year. As, you know, I'll argue a little bit later, with respect to these court's decisions in Hy-Zine, Hilleland, he did not actually face prison time. So as far as the as-applied challenge, again, is concerned with respect to Mr. Warner. Since his probation terminated upon the payment of the fine in that case, he was never in a situation, kind of like Mr. Hy-Zine and Mr. Hilleland, to potentially face incarceration. I don't want to interrupt the progression of your argument. You're going to discuss Hy-Zine a little bit later? Oh, yes. All right. Okay. So let me go back to the unique features. First of all, he appears before two judges, pleads guilty to crimes, both felonies, one possession of a firearm by a felon, and they allow him to continue to possess firearms. Add to that the ammunition that was taken during the course of a search warrant that led to the felon of possession of firearm in New Mexico. That ammunition was returned to him. Another, I mean, I'll certainly candidly admit before the court that someone who is a felon is prohibited from possessing firearms or ammunition federally. I certainly admit that. However, for whatever reason, again, the Rio Rancho Police Department gave Mr. Warner ammunition back. Well, and my recollection, and correct me if I'm wrong, is that the ATF had given him notice that he shouldn't be in the business of dealing in firearms. Correct. Are they not? Correct. Well, they did that. He knew he was a felon. What more did he need? I don't care what the state did with him. The federal authorities had told him stop doing it. Understandably so. And I think that brings out the tension that he faced. And I will certainly concede that the ATF did notify him that he should not be in the business of selling firearms and he should stay away from that. I know that a key feature of the government's evidence was a letter that was written to him. He didn't acknowledge necessarily agreeing with the letter, but he did certainly acknowledge receipt of the letter. And that's what the letter says. Received by Charles Warner. And he certainly acknowledged that. And the letter said that you may be prosecuted. Not that you will be. You may be prosecuted. And what more did he need? I mean, he doesn't have to agree with it. He just has to know that they're telling him don't do it. And he knows he's a felon. I mean, what more does he need? This went on for a number of years. And each time he was presented with any interaction with ATF or presented that letter, he never left in handcuffs. And he was told that you may be prosecuted. Yes, he skirted a, I think admittedly a fine line between this. But getting back to federal authorities for a moment, it was a theft of a firearm from Mr. Warner's home, which was across the street from the shop where he worked. Mr. Warner, the felon that he was, reported that to authorities. Basically drawing attention to himself. Again, I think in support of a belief that he is not prohibited from possessing the firearms. Albeit an incorrect belief now. I think standing here today, I can tell you that he is aware of that as well. But as far as federal authorities' concerns, United States Park Police, a federal special agent similar to an ATF agent, certainly with a different scope, returned the firearm to him. Why does it matter? You know, in this classic mistake of law, he knew that he, as you admitted, that he was a felon. His crime in South Carolina was punishable by over a year in prison. He may or may not have read 922 G1. So maybe he was mistaken. But he knew the facts that would have triggered, as a matter of law, the applicability of the prohibition in 922 G1. And so what authority do you have? I'm sorry, it's a long question. So what authority do you have that a mistake of law about the applicability, maybe there's no promissory reliant, you know, estoppel, is there? No, and I think it's kind of like parsing the Rahif decision in a certain way, where Rahif states that the person needs to know they were in the class of people prohibited, right? And I think the way it has been defined is that the felon class or the addict in possession class, that particular class. But I'm arguing, Judge, and trying to extend that, that within that class of felons, not every felon is prohibited from possessing a firearm. We know that there's certain exceptions, albeit small ones, that Mr. Warner, what Mr. Warner's knowledge of being in a class, although he knew he was a felon, he was not, he did not know that he was in the class of felons that were prohibited in possessing a firearm. I don't think it's an estoppel type question, but I think it's a very fine reading of what Rahif says that they need to know they're in the class of people. And what Mr. Warner's knowledge, based upon things, and certainly Chief Judge Holmes, as you point out, contradictory information, right? I mean, I think there's a part that he's going to want to believe, obviously, the more favorable facts to him. But he is... What subclass did he believe he was a member of that would allow him to have a gun? That his felony did not prohibit him from possessing a firearm. Because of the business regulation exception? I would say that. I don't think it's, I'll admit, I don't believe that's my strongest argument, but that of felons, like Mr. Heise was a felon, right? Yet he was in a class of people who could not be convicted of 922G, felon in possession offense. For Mr. Warner's unique circumstances as they were, not having faced prison on the one predicate conviction that he had, I know I've talked about, too, the New Mexico conviction, but that did not serve as a predicate in this case because he received a conditional discharge and that was dismissed upon his completion of probation. So the only predicate felony in this case was one of the South Carolina convictions. Again, I admit, as Mr. Warner admitted before the court, he had two convictions from South Carolina, but only one was the predicate. The government, I don't think, had the documentation. It went back a very long way. But of that, since Mr. Warner did not face prison on the one predicate offense that he had, he believed he was in the class of felons that were not then prohibited from possessing firearms. What I need to get clear on is what are the characteristics, factually, of this class that you're talking about? I mean, I want to try to understand this argument you're making for extending Rahib, but it surely can't be, oh, I'm special, you know, I haven't been arrested, so I don't need to, I'm not subject to prosecution. If this argument is going to work, there need to be specific facts that he has knowledge of that indicate to him that he is not prosecutable. I think the unique facts surrounding him, Judge, that he did not face prison time for his South Carolina conviction, but adding on, curiously enough, he was also not prohibited within the state of South Carolina, nor was he prohibited within the state of New Mexico, had the federal 922G not existed. He would be permitted under state law to possess a firearm in New Mexico, he would also be permitted under state law in South Carolina to possess a firearm as well. But those facts are not facts that are enumerated in the statute. No, correct. That somehow or another would alleviate the problem that he has. And it would seem to me that if this thing is going to work, you'd have to be able to point to something that he says, I thought, yes, I knew it was a felon, statute says that, but I also knew the statute had this exception and I thought I was in that exception. Well, I would kind of turn it around slightly in the sense that while he didn't think he had an exception, he didn't think he was part of the people that were prohibited. Not that he had an affirmative exception, but his belief that he was not prohibited based upon his unique factors, which I've mentioned. Okay, and I want to be clear just for housekeeping purposes on this. As it relates to the constitutional challenge, the as-applied challenge, are you saying there is or there is not something for us to do anymore on that? When we resolve this case, do we have an issue that we need to resolve? I believe so, Judge. I believe that based upon the way the statute's been applied to Mr. Warner, who is a non-violent felon who had been provided firearms by multiple judges, the Federal Law Enforcement Agency has not prohibited the state of domicile or the state of predicate conviction. I do believe that it is unconstitutional as applied to him, and also based upon the strength of the Heise and Hilleland decision. Okay, so Vincent v. Garland does not foreclose relief, as the government suggested, for your claim? I believe that to be the case, Court. I will quickly go on. I will not have any time for rebuttal. I just want to touch on the two other main points. The business of dealing in firearms. The requisite statute that he has to do is to be engaged in a livelihood with the purpose of running a business. The government's evidence, I think, is conspicuous only by its absence and what the proof lacks. We didn't hear from any customers. There were no bank records. There were invoices. There was one invoice. Actually, Mr. Warner was the one who said, I sold one firearm. So he admitted to selling one firearm, an antique gun, as well as, I guess, an incomplete sale. Three, and that is an expansive view of this, is not the repetitive sales that are required by the statute. Actually, selling your own, making occasional sales of your own personal items is permitted by statute. Finally, as to the sentencing argument is concerned, I think Ms. Eisenbaugh's testimony is quite clear. She was applying her own definition, giving Mr. Warner no notice of what a frame and receiver is. And curiously, for the first time on their answer brief, the government uses the current operative definition, which we're not here before the court, to determine whether those... I see my time is up. Go ahead and finish your thought. It's hard to finish my thought now, but I will do it very quickly. We're not here to decide whether those items meet the current frame and receiver definition. We're here to decide whether or not they met the at-the-time-of-his-sentencing, as well as at-the-time-of-possession frame and receiver definition. I submit that it did not. I thank you all for the time, and I apologize I have nothing left for rebuttal. No, go ahead. I just have one question, and I'm sorry, I know you're over time. You mentioned Heise three times. The opening comment was that Mr. Warner knew that he, in this South Carolina conviction, triggered a punishment of one year or more. In Mr. Heise's case, because of Kansas' unique statutory scheme, there was no argument, even as I recall, even to the panel, by the government, that Mr. Heise ever actually was exposed to any prison time because Kansas has a very unique statutory scheme that he had mandatory probation. And that was, I think, as I recall in Heise, the entire rationale. There was no possibility. There obviously was a possibility that he would be subject, Mr. Warner would be subject, to a year or more in prison. Isn't that a pretty sizable difference? It is a big difference, but I think Heise doesn't speak about the hypothetical defendant. I think it focuses on the individual defendant. And here, Mr. Warner was sentenced, it says in the judgment that's part of the record here, probation terminated upon payment. His sentence would be done as payment is made to the victim in this case. So once that was done, he himself did not. I think that puts him in more of the Heise and Hill land. Okay. That's very helpful. Thank you. Good morning. May it please the Court, Jamie Roybal on behalf of the United States. At the heart of this appeal is the question of whether or not Mr. Warner may possess firearms. And he raises that question to this Court in many forms, but the answer to each of his challenges is no. Mr. Warner remains a prohibited person and cannot possess firearms. I heard Mr. Meyer say a number of times in his argument that there are unique circumstances as to Mr. Warner, and I would submit to the Court that the only unique circumstance as to Mr. Warner is that he is a very talented gunsmith. And unfortunately for Mr. Warner, that is not a constitutional class that merits special treatment under the law. So, first off, he is a convicted felon. Section 922G1 is constitutional as it applies to him. I do not think that there is a constitutional question left for this Court to decide based on the Vincent decision last week. I think that that very squarely forecloses his constitutional claim. Next, the United States presented far more than 25 firearms for his conviction for dealing in firearms without a license. And finally, the District Court did find by preponderance of the evidence that he possessed more than 25 firearms for sentencing purposes. I'd like to begin my argument as to addressing the sufficiency claim first, unless the panel would like me to start elsewhere. Of course, the standard of review that applies when dealing with the sufficiency challenges, this Court does not weigh conflicting evidence or witness credibility. Those are issues that are specifically for the jury. This Court will reverse a conviction for insufficient evidence only when no reasonable jury could find the defendant guilty beyond a reasonable doubt. I'd like to give you the 10,000 foot overview of what the summary of the evidence was at trial. This was a unique case to try based on the felon in possession count, and it was not until Mr. Warner was subject to cross-examination that he admitted that he knew he was a felon. So a good deal of the evidence was really intertwined between the two counts. Did he know that he was a felon and couldn't possess guns? And then was he also a convicted felon who knew he was a convicted felon, who knew he couldn't possess guns, who was running a firearms business? I would start by pointing out the panel has already noted the letter from the ATF. It was called Notice of Prohibited Status. Mr. Warner read that letter on cross-exam at trial. He acknowledged that he received it at the time. It had his signature on it and it was very clear, and he did not state at trial that any of it was unclear. Well, on cross-examination, he acknowledged that he was a felon. Did he acknowledge that he knew he couldn't possess weapons? He acknowledged that he knew he was a felon, and I think that Mr. Myers pointed out a lot of the confusion, which were facts we just had to overcome at trial about the state court judge and the park service agent and people who I think did cause some confusion as to whether or not he could possess guns. But what I would submit, Your Honor, is that he definitely knew he was a felon because he couldn't be on the federal firearms license for the elite warrior business which he was essentially running. He just wasn't running it on paper. So a good portion of our evidence at trial dealt with the history with elite warrior armament including ATF's repeated involvement and part of why elite warrior lost their business license is because of Mr. Warner's continued involvement with the business. But on the question of whether he is a prohibited person and therefore cannot possess a firearm, I don't think he could say yes, I can't participate in the business elite warrior got in trouble because I was involved in the business but I could still possess a firearm. And so I guess what I want you to focus on is what I understood his argument to be which is his being your opposing counsel an extension of Rahif to say that yes, not every felon is subject to being convicted under 922G and therefore I was aware of circumstances that would have led me to believe that I wasn't in the class of people that would have been subject to being convicted. What do we do with that argument? And is your Honor's question what do you do with that argument as to Mr. Warner's claim today that he is not he is not subject he is not a prohibited person under 922G or at trial Mr. Warner's... More specifically what do we do with that argument as it relates to his mens rea for the offense? I mean the idea that he knew he was in the class where he would require a people that was subject to being prosecuted and unlike the other in some sense the other prohibited well unlike some other classifications under that statute of prohibited person not every felon is subject to being convicted under 922G you know every drug user would be so how do we deal with the mens rea at the time he's convicted? He acknowledged multiple times at trial and I think there was a lot of evidence at trial separate from his own testimony to suggest that without question he knew he was a felon and I think... Well the kind of felon that was subject to prosecution because not every felon is subject to being prosecuted and convicted right? Correct your honor and in you know thinking back to Mr. Warner's cross examination and frankly his direct examination at trial it was not I didn't think I was the felon who was not subject to being prosecuted it was everyone was so confusing to me and so I just thought and I don't even know that it was I just thought that I could possess guns it was and so I still did possess guns right so the ATF is telling me you know they send me this letter that I acknowledge is clear and they tell me I can't possess guns and they tell me I might be prosecuted but they never arrest me when they come to our business and so for that reason I continued to possess guns and a state court judge even though I acknowledged in pleading guilty to this state felon in possession crime that I was necessarily a felon that state court judge for whatever reason gave me guns back so I still possessed them so I don't interpret Mr. Warner's trial nor any of the other evidence to say I thought I was the the exception of people under 921 who couldn't possess guns it was just that everyone was so confusing to me and so I still did possess them and I was very good at building them and I was very good at selling them and so for that reason I am therefore the special felon that just should not be subject to felon dispossession statutes and I think that much of that is still reflected in this appeal today and so again I would like to direct the court to the kind of overwhelming evidence that was presented at trial separate from this kind of intertwined and very long history with the elite warrior business we presented the jury with many many invoices that Mr. Warner acknowledged on cross-examination that he had sold those firearms and I think the strongest evidence we have were Mr. Warner's Facebook communications so he acknowledged that after the business shut down he continued to run the elite warrior Facebook page which showed repeated sales and it was still a business being run, it was run by him and again his language reflects not a one-off sale and not a personal collection he uses language like standard production in available for delivery options available someone asked him on Facebook are you guys quietly taking in work or just clearing the workload and his answer was both question mark, again Mr. Warner's language when he spoke with the undercover agent, those recorded calls which we've provided to the panel he says things like building and projects and spec sheets I was intrigued by that in your brief is your argument that he was using the lingo of the dealer suggested that he was a dealer using legal terms of art connoting the fact that you're suggesting that someone is a lawyer how does the use of technical lingo, how is that probative? Well your honor I think it's probative because if someone was just selling a personal collection to say you know I have this gun as part of, this is my gun I have had it for many years and I am just getting rid of it, I think that that's different from you know telling the undercover agent who he of course did not know was the undercover agent at the time, you know our elite warrior business has closed so all of these have become personal projects, you get me? And so there was a lot of kind of wink wink going on throughout this case for a very long time and again I think that someone who is saying you know or claiming this is a personal collection and that was our burden to prove it was not a personal collection I think we meant that, I think that saying things like you know I'm going to be designing this new firearm and accepting deposits for that, that really cuts against the idea that this was a personal collection and again we had to show repeated natures of sales, we had to show that this was not just an isolated sale and there were numerous instances in the record where we were able to show continuous and repeated sales, this was his business, Mr. Myers argued this at trial, he said what you see on the table because we had all you know 90-ish firearms out before the jury was a man's life and I think that that's really what this is about firearms have been at the center of Mr. Warner's life the unfortunate reality for him is that he may not possess them under the law. You said that you had to show repeated sales how do we square that with how this case was charged, I mean as being charged on one day I mean is there a basis to show repeated sales based upon one day's activity and what do you do with that? Well, Your Honor that is something that was argued at the district court level as Mr. Warner's argument was the government charged this as one day so it's therefore a one day crime and I would disagree with that, we stated that on October the 28th of 2019 which is the day that Mr. Warner sold the firearms to the undercover agent he was a dealer and so you know the district court provided the definition of the dealer to the crime and that means any person engaged in the business of selling firearms at wholesale or retail and you know there's more to that but I would say that what we alleged is that Mr. Warner had been engaged in selling firearms for a very long time and he was doing that under the guise of the elite warrior when the business was licensed and then when the business license was revoked he continued to do that and just moved the inventory across the street to his house so certainly somebody could have been a dealer on October the 28th and had taken that day off so to speak it's a status I believe as opposed to you know an action that had to be taken that day although we did show that on that day he did sell a firearm to an undercover agent well okay it's a status but he was engaged in the business of dealing in firearms so would the argument be that by virtue of his prior conduct he had shown himself to occupy the status of dealer and on that day he was engaged in the activity that is consistent with that status yes your honor I think that's a fair characterization of our argument so Mr. Myers attempted to have the district court exclude any evidence that was not specific to October the 28th the district court did not do so and found that the invoices and the Facebook communications from 2018 and 2019 were relevant and that's not an issue before this court today and so you know what we've what I would say is that we let me add this I thought one of the unique arguments at a trial was that you know made on Mr. Warner's behalf this this wasn't a business because I wasn't profitable but I think he acknowledged that the money was going to pay his bill so there is no requirement under the law that the business be profitable in order for somebody to be engaged in the repeated business I would like very quickly if I could transition to the Heise issue as to whether or not Mr. Warner still remains a prohibited person and I'm going to say two things about it first off is that Heise was published prior to our trial and Mr. Warner could have asked the court to revisit that issue at any time before trial and he failed to do so and even if Mr. Warner's counsel did not read it nothing prohibited prohibited him excuse me at the time from raising the substance of the Heise argument to the district court and he failed to do so so our view is that this is a new argument and the court should treat it as if it's waived but if not what I would say is that in Heise the key issue is that that defendant was mandated to be sentenced the way that he was based on the Kansas sentencing scheme and the key issue here is that Mr. Warner was eligible for more than a year of imprisonment the Heise inquiry is not what that specific defendant did receive is what they could have received and so just because the South Carolina court chose not to sentence him to a term of imprisonment doesn't mean he wasn't an option and I see that my time has expired. I'm going to ask one question to make sure I understand your view on it. What do we do with this reference to frame or receiver and suggestion that you're using a definition that didn't exist at the time? Are you saying as to what we the allegation that you're using 478.12 did not exist at the time of his criminal conduct and therefore that was not applicable and that your use of that, yes, in the brief was inappropriate? We noticed just last week when we were preparing the argument for this case that we included the new definition from the CFR not the operable definition at the time so I'm sorry about that. What I would say as to the sentencing issue though is I don't think it's fair to state that the expert witness at sentencing did not consider the CFR or that the chief judge who sentenced Mr. Warner did not consider the CFR so the court has Ms. Eisenbaiz's report in the record and you can see on the second or third page of her report that she lists the federal definition of firearm which includes framer receiver and so I think that her findings as to each specific item that she reviewed are pretty extensive and this court is able to review those. She noted markings on the firearms and key machining and drilling features as to each one that would make it qualify as a framer receiver and what I would say is that the chief judge was also aware of the legal definition of framer receiver under the CFR and he made a factual decision based on the expert testimony and having had the chance to view all of these items at trial that that adjustment applied and I think by a preponderance standard that was the correct decision. Alright, thank you. May I ask a follow up? Of course. I'm sorry to go over time but I do want to ask a follow up. Under the regulation, as I read it, to constitute a frame it has to house the quote firing mechanism. The expert witness acknowledged that none of these additional guns other than the 14 had any firearm control parts. Well, if they didn't have any firing control parts under the regulation, how could they have contained a firing mechanism even though he found that preponderance of the evidence it seems to me that his finding is specifically contrary to the combination of the regulation and the expert witness' testimony. I think that's a good question, Your Honor, and what I would point the court to is the portion of her testimony where she explained that the 1911 style pistol, which is primarily what Mr. Warner possessed and that's what he was known to be making and manufacturing, had been known to the ATF for many, many years so this was not necessarily a new firearm that was unfamiliar to them so that's the first thing that I would say and then the second as to Your Honor's question is Ms. Eisenbeiss also explained that the CFR encompassed many different types of options for firearms and it wasn't necessarily to be treated as a checklist that everything to qualify as a framer receiver had to check every single part of the CFR and so that's what I would submit. I don't want to belabor this but are you saying that the regulation does not require to constitute a frame that it has to contain the firing mechanism? No, I think that's what the CFR says, Your Honor. And the expert witness said that none of these guns had a firearm control part, right? So what she examined and again her reports in the record are the unassembled frames they had been serialized and what she said is that they had not been properly destroyed to no longer qualify as a firearm, so to speak. What she described and I feel like I owe you an apology because I am not a gun expert so I have a hard time articulating this. There's no requirement that you have to be a firearm expert.  essentially ready to, pieces that were ready to assemble that then the firearm could function. I understand that it could be a ready to expel projectile. Right. But that was an independent finding. The judge also found not only were these firearms but they were also frames and that's what I worry about that there was a factually incorrect finding that tainted his findings to trigger the enhancement but I don't want to belabor it. I just want to make sure I understand it as best as I can. What I would offer to the court is we did the best we could at sentencing and if this court feels that there's an error we would welcome the opportunity to give that another try. I'm not suggesting that there was I'm just trying to understand it and that helps me tremendously. Thank you. Thank you very much. We'll give you if you want it three minutes of rebuttal. You don't have to take it and I won't eat up your free time. I wouldn't say no to the opportunity to do that but I don't want to use it all on a tender. Most of my time to the court wasn't as prepared to do it but just a couple of comments that I had written down to myself. The crime was dealing in firearms without a license, not being a dealer at the time. The government made a conscious decision when to choose that. What happened with the undercover on that day was not even a sale of a firearm and they actually admit that and that was the count that was dismissed. The only person who made a firearm on that day was the ATF. The government dismissed the count associated with the possession of a firearm on that day because it was not a firearm. It never proved the trial that it was a firearm. They only proved the trial of one firearm and that was the Kimber on the nightstand. They did not, contrary to Ms. Roybal's comments, show repeated sales. Repeated sales to me usually involve a buyer and a seller. We heard from one undercover agent, nobody else. And finally, I think Mr. Warner's view was not that I am a special felon. It somewhat trivializes, I think, a lot of the facts that were laid before Mr. Warner and this would be, I think, genuine confusion to an average person that when judges tell you, albeit not federal judges such as yourself or Chief Judge Dawson, when judges allow you to do so. With that, I'll tender the rest of my time to the court unless the court has any questions for me. Thank you for your time. Case is submitted.